## Rentfrow *v.* Shaw *et al.*

Where a note on a third person was given in exchange for a slave with warranty of soundness, and the vendee subsequently gave his own note and other property to the vendor, in exchange for the note previously given for the slave; it was held, that, the vendee might give in evidence the unsoundness of the slave as a bar to a recovery on the note of the vendee so substituted, the original consideration being the purchase of the slave.

IN ERROR from the circuit court of the county of Octibbeha.

This is an action of *assumpsit* on a promissory note for $400, made by William C. Shaw & John G. Skinner, payable to the order of James Barber, and assigned to Thomas S. Rentfrow, the plaintiff below.

It appeared in evidence that Barber had sold William C. Shaw and Joseph Shaw a negro man, named Scott, on the 14th of November, 1836, for the sum of $1,100, and in payment, transferred to said Barber certain notes, amongst which was one on Harvey & Smith, the exact amount of which did not appear. It was also proved that the note on Harvey & Smith was subsequently transferred by Barber to William C. Shaw, one of the purchasers of the slave, and the note which is the foundation of this suit was executed in consideration thereof, with said Skinner & Anderson as sureties. It appeared also, that a horse was given as a difference between the note returned and the one declared on in this suit. It further appeared in evidence that Harvey & Smith were solvent.

One Standifer was introduced by the defendants, who testified that he heard Barber say that the note sued upon "was the remnant of Scott," the negro slave sold by said Barber to defendant Shaw, and was executed by said Shaw with the other defendants as security, in part consideration of a promissory note on persons by the name of Harvey & Smith, and transferred by Barber to Shaw; said note on Harvey & Smith was for a larger sum than the

note sued for in the action, and that a horse, estimated at $250, was delivered for the balance.   The witness Standifer further testified that the slave Scott sold by Barber was unsound; the plaintiff objected to this testimony upon the ground of irrelevancy. The bill of sale from Barber to Wm. C. Shaw and Jos. Shaw, warranting said negro to be about 27 years of age, sensible, sound and healthy, and a slave for life; and also containing covenants of title, was introduced by defendant, together with the testimony of one Jonah Watkins, the witness to said bill of sale.   The introduction of the bill of sale and testimony of Watkins were objected to by plaintiff, which objections were overruled.

Watkins testified that he was present when said bill of sale was executed by said James Barber; that said Barber sold said negro slave Scott to the said William C. Shaw, and his brother Joseph Shaw, for the sum of eleven hundred dollars, as mentioned in said bill of sale, and that bill of sale was signed by said James Barber, who received in payment for said negro slave Scott, from said William C. Shaw, a note on persons by the name of Harvey and Smith, and other claims, in the aggregate amounting to the sum of $1,100.

He did not recollect the amount of said note on Harvey and Smith, or whether the same has ever been paid or not; that he is a physician by profession, and was called in as such by said William C. Shaw, one of the defendants, a short time after the said slave Scott was sold by said Barber to Shaw ; he thought it was about the last of the year 1837; he prescribed and administered for the said slave Scott, and that he attended him until some time in the spring or summer of the year 1837, when said Shaw sold Scott for a tract of land of 40 acres, worth about $400; that slave Scott was sold by William C. Shaw as an unsound slave.   He further testified, that when he first visited Scott he was consumptive, which disease, from appearances, must have existed before and at the time of said sale, and that he considered said disease incurable, and that Scott was of little or no value, and not worth more if as much as said Shaw sold him for, and that he would not have such a slave.

To the admission of said bill of sale in writing, and the evidence

of said Watkins, plaintiff objected, which was overruled by the court, to which overruling of the court plaintiff .tendered bill of exceptions.

The defendants then introduced one Wellington Shaw as a witness for the defendants, who testified that he was not present when any or either of the trades between the parties was made; knows nothing of his own knowledge except what he heard from the parties; that he heard the parties say that they had traded about the negro Scott, and that after the trade about Scott was concluded, that Joseph Shaw relinquished the benefit of the trade in said Scott, to William C. Shaw, that Barber had received for said Scott sundry claims or notes, among which was the note of persons by the name of Harvey & Smith.   That said Barber informed witness on the evening of the day of the sale of said Scott that the note on which the present suit is founded was a part of. the consideration of said slave Scott; that the same note upon which the suit is founded was executed by William C. Shaw, in lieu of the note of Harvey & Smith; that said Barber had returned said note on Harvey & Smith, to William C. Shaw, and in lieu thereof had received the note upon which the suit is founded, together with a horse; that the note upon which this suit is founded was the balance of the price of said slave Scott, and that Joseph Shaw had left before the' evening when the note of Harvey & Smith was returned, and the executing of the note on which this suit is founded, and the delivery of the horse by William C. Shaw to Barber.

One Thomas J. Moore was introduced as a witness for the defendants, who said that a person by the name of Moseley, some short time previous ·to the sale of said slave by said Barber to said Shaw, about the month of October, 1836, offered to sell said slave Scott to him, as an unsound negro ; and that said Moseley was a negro trader, and informed witness that Scott was diseased with the asthma.   That said Moseley offered to sell said Scott for 800 dollars, which he refused ; that Moseley then offered to take 700 dollars for him and permit witness to take him on trial, which witness refused, not wishing to purchase a diseased slave.

The plaintiffs then introduced Josiah Skinner as a witness, who testified that he was present when the note upon which this suit ·

*55**

is founded was executed; that the same, together with a horse, was given by William C. Shaw to James Barber for a note on Harvey & Smith, was the same note which had on the morning of the same day been transferred to said Barber as a part of the price of said Scott.   Whereupon, after consideration, the jury returned a verdict for the defendant; at the same time the plaintiffs moved to set aside the verdict for the reasons following:

1st.  Because the court permitted inadmissible testimony to be given to the jury, in this, that after the defendants had proved the consideration of the note sued upon was in part consideration of a promissory note on Harvey & Smith, delivered or transferred by the plaintiff to one of the defendants, William C. Shaw, the court permitted the defendants to introduce another transaction between different parties, and a previous transaction, as evidence to said jury.

2d.  Because said verdict is contrary to law, in this, that it finds a real consideration a failure of consideration, by reference to matter unconnected with the matter at issue.

3d.  Because said verdict is contrary to the charge of the court to the jury.

4th.  Because said evidence is contrary to the evidence given in the case.

5th.  Because the plaintiff was taken by surprise on the trial of the cause, by the admission of evidence by the court that did not support the issue, and which the plaintiff could not, from the issue joined between the parties, be prepared to contradict.

Motion overruled, bill of exceptions filed, and writ of error to this court.


Howard, for plaintiff in error.

1. The contract between Shaw and Barber in respect to the slave should not have been admitted by the court below as a defence to this action.   The note sued on in this case was not given in consideration of the purchase of the slave Scott.   The original note of Harvey & Smith transferred by Shaw to Barber, in payment of the negro, was subsequently purchased again of Barber by Shaw, and the note sued on in this action, together with a horse valued at $250, exchanged for said note.   The consideration of the note which is the foundation of this suit, was the

note of Harvey & Smith then sold to Barber. Harvey & Smith could not have plead the unsoundness of the negro in bar of a re-covery by Barber. How then can Shaw do so, who is only the assignee of Barber? The note of Harvey & Smith was a sound consideration for the note now sued on, for it appeared in evi-dence, that they were solvent and able to pay.

2. It is manifest, that, if Shaw had any remedy for the unsound-ness of the negro, it can be found only in an action on his warranty in the bill of sale. The bill of sale, and the evidence in relation to the unsoundness of the slave Scott, were entirely *res inter alios,* and should not have been admitted on the trial. 3 Star. on Ev. 1300.

3. It must be borne in mind, that the negro was sold to W. C. Shaw and Joseph Shaw; that the note on Harvey & Smith was purchased by, or returned to W. C. Shaw, and that *he* executed the note now in suit, and paid the difference in exchange for the note on Harvey & Smith. The last transaction was not therefore between the same parties, who purchased the negro, and trans-ferred the note on Harvey & Smith. It was entirely a new con-tract with different parties; how then can a failure of considera-tion in the one be plead in bar of recovery on a note given in the other, for a different consideration and another purpose? The court could not go beyond the consideration of the note, which is the foundation of the present suit, to inquire into transactions be-tween parties having no interest in the purchase of the note on Harvey & Smith.

4. The testimony of Moore as to the declarations of Mosely, was hearsay, and ought not to have been introduced. Mosely should have been introduced upon the trial, if his testimony was competent.

G. S. Yerger, *contra.*

1. The errors assigned are, that evidence of the unsoundness of the slave ought not to have been received, because the considera-tion of the note sued on, was the re-assignment of the note of Harvey and Smith, and not the sale of the negro.

The evidence shows that Harvey & Smith's note was by agree-ment received in part consideration of the sale of the negro. The parties by consent, set aside this agreement, and the note sued on

was given, not for Harvey's note, but in lieu of Harvey's note, and in consideration of the sale of the slave.

2. Suppose instead of the note of Harvey and Smith being received in payment, money had been paid, and the party afterwards in lieu of the money, received the party's note, would the case not be precisely as if the note had been originally given? The jury by their verdict have found the note sued on, was given in lieu of Harvey and Smith's, and their finding ought not to be disturbed.

The evidence shows the consideration had failed, and the judgment should be affirmed.

Opinion of the court, by Mr. Justice TROTTER.

This is purely a question of fact, and must be decided upon the proofs in the cause. It is true that the note in the case at bar was given in exchange for the note already transferred to Barber upon Harvey and Smith, but it is impossible for the mind in view of the circumstances which accompanied this exchange to consider the transaction in the light of a purchase made by Shaw of the other note. The note on Harvey and Smith was transferred in the forenoon, and re-delivered for the note sued upon in the afternoon of the same day. It appears to have been nothing more than a substitution by agreement, of the one note for the other, and the delivery of the horse to Barber cannot alter the transaction. It was the same transaction, and consequently the same consideration passed for the $400 note and the horse, which passed for the assignment of the note on Harvey and Smith. This transaction carries its explanation on its face. The contract by which Harvey and Smith's note was transferred, was rescinded by agreement of the parties, and the note here sued on, and the horse, substituted to complete the payment of the residue of the purchase money. But if there was any room for doubt as to this interpretation of the facts, it must be considered removed by the testimony of Standifer, one of the witnesses, who states that Barber himself informed him that the note in this case was executed by Shaw in part consideration of the negro slave, Scott, or was the "*remnant* of Scott.*" The testimony of Wellington Shaw, another witness in the cause, confirms the statement of Standifer. He states that

[Rentfrow *v.* Shaw *et al.*]

Barber on the evening of the day when the sale of the slave was made, informed him "that the note on which the present suit is founded, was a part of the consideration of the slave sold by him to William C. Shaw; that this note was executed by William C. Shaw in lieu of the note on Harvey and Smith, and that he, Barber, had returned the note of Harvey and Smith, and in lieu of it taken the note in suit here and the horse." It is difficult to conceive how any fact could be better supported by proof. This being the case, and the jury having found the slave to be unsound, whose peculiar province it is to respond to questions of fact, we do not feel inclined to disturb their verdict.

Let the judgment be affirmed.